## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PANAMA CITY DIVISION

**KAYLA MARIE EDDIE,**

    Plaintiff,

                                       **CASE NO.: 5:22-CV-140-AW-MJF**

**v.**

**JACKSON COUNTY, FLORIDA,**

    Defendant.

_____/

## PLAINTIFF'S RESPONSE TO DEFENDANT'S
## MOTION TO DISMISS AMENDED COMPLAINT

Plaintiff, KAYLA MARIE EDDIE, responds to Defendant, JACKSON COUNTY, FLORIDA's, Motion to Dismiss her Amended Complaint (Doc. 11) and states:

Defendant's claim that the Amended Complaint should be dismissed is without merit.  As discussed below, Count I (negligence) and Count II (section 1983 liability) contain more than enough direct or inferential allegations respecting all material elements of those causes of action. See Snow v. DirecTV, Inc., 450 F.3d 1314, 1320 (11th Cir. 2006) ("A plaintiff need not plead specific facts for *every* element of a cause of action.") (emphasis in original).

### I.    Count I is Not a Medical Malpractice Claim

"Because of the statutory restrictions and requirements that apply only to

medical malpractice claims, any 'doubt' as to whether a claim is for ordinary negligence or medical malpractice should be 'generally resolved in favor of the claimant.'" <u>Simmons v. Jackson Mem'l Hosp.</u>, 253 So. 3d 59, 61 (Fla. 3rd DCA 2018) (citations omitted). "The critical question is whether the plaintiff must rely on the medical negligence standard of care as defined by the statute to prevail." <u>Mark E. Pomper, M.D., P.A. v. Ferraro</u>, 206 So. 3d 728, 731–32 (Fla. 4th DCA 2016); <u>See also</u> <u>Kellar v. Fla. Dep't of Corr.</u>, No. 4:14CV84-RH/GRJ, 2015 WL 1296030, at *5 (N.D. Fla. Mar. 22, 2015) (a claim asserts medical negligence if the claim will succeed only on a showing that the defendant failed to "comply with the standard of care applicable to a medical professional" of the relevant kind).

As discussed below, Plaintiff's claim does not include a breach of the medical standard of care. Thus, Count I is not subject to the pre-suit requirements of Florida Statute Section 766.106.

i.    <u>The Amended Complaint Does Not Include Breach of the Professional Standard of Care</u>

Plaintiff's claims do not need a qualified medical expert to prove. <u>See</u> Amended Complaint Paragraph 33 (stating that Defendant's conduct did not take specialized medical training to know that Plaintiff needed to see a physician in order to determine how to pass the unviable fetus.) Defendant simply refused to send Plaintiff an OBGYN when the need for it was obvious. <u>See</u> Amended Complaint Paragraph 15. Therefore, the instant case is similar to <u>Morrill v. Holmes Cnty.</u>, No.

5:15-CV-324-WTH-GRJ, 2017 WL 6330630, at *5–6 (N.D. Fla. 2017), <u>report and</u>
<u>recommendation adopted sub nom.</u> <u>Morrill v. Drs. Mem'l Hosp.</u>, No. 515CV00324-
WTH-GRJ, 2017 WL 6329950 (N.D. Fla. Dec. 11, 2017).

In <u>Morrill</u>, this Court held that the plaintiff's claim "is not that the Hospital
made a medical error, but that, for reasons unrelated to medical judgment or
performance, the Hospital consciously chose not to provide the needed care." Thus,
this Court concluded that "[a]lthough Plaintiff's claim here is related to medical care,
it has nothing to do with a decision based on professional judgment." <u>Id.</u> at *5.
<u>Morrill</u> is directly on point because the instant case also concerns the deprivation of
medical care; Plaintiff's claim also has nothing to do with a decision based on
professional judgment.

Other cases similarly hold that the deprivation of medical care is not subject
to the pre-suit requirements of section 766.106.  <u>See e.g.</u>, <u>Dempsey v. Ford</u>, No.
5:21cv134-TKW-MJF, 2021 WL 8533034, at *4 (N.D. Fla. Sept. 24, 2021) (finding
that an amended complaint that alleges the plaintiff would not have died if she had
been "properly treated in a timely manner" at the jail was not due to be dismissed
based on plaintiff's failure to comply with the pre-suit notice requirements in §
766.106); <u>Horst v. Parker</u>, No. 6:07–cv–612–Orl–19KRS, 2007 WL 4557243, at *3
(M.D. Fla. Dec. 21, 2007) (finding the plaintiff's claim to be an ordinary negligence
claim because it was based on medical contractor's failure to provide medical care

in general, as opposed to plaintiff's prior medical negligence claim based on medical contractor's failure to provide plaintiff his prescribed medications); Tenet St. Mary's Inc. v. Serratore, 869 So.2d 729, 731 (Fla. 4th DCA 2004) (holding that plaintiff's claim, which was based on an injury received when a hospital employee tried to return a dialysis chair to an upright position, did not arise out of the receiving of medical care because "[t]here is clearly no professional standard of care involved in attempting to kick a footrest of the reclining chair to return it to its upright position"); see also Harris v. Sheriff, Jefferson Cty. Fla., 460 F. App'x 896 (11th Cir. 2012) (upholding a county-jail inmate's negligence claim against a sheriff for delay in providing medical care; no discussion of the presuit requirements); Nobles v. Corrs. Corp. of Am., No. 4:07cv288-SPM/WCS, 2008 WL 686962 (N.D. Fla. March 12, 2008) (dismissing a prisoner's medical-negligence claim for failure to comply with the presuit notice requirements but allowing another negligence claim to proceed).

The instant case is also similar to Feifer v. Galen of Florida, Inc., 685 So.2d 882 (Fla. 2d DCA 1996). In Feifer, the appellants were told by hospital admission employees they would have to walk on their own power without the provision of a wheelchair to various areas of the building. Id. at 883–84. The court held that chapter 766 "did not abolish ordinary negligence claims against those who may be in the business of providing medical care or services. If a plaintiff can successfully allege factual matters constituting ordinary negligence, he or she is not precluded from

doing so." <u>Id.</u> at 885. Thus, as with the instant case, refusing to refer Plaintiff to her physician does not make the claim one of medical malpractice.

Without question, the Defendant can be held vicariously liable for the ordinary negligence of his agents/employees. <u>See Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cty</u>., 402 F.3d 1092, 1119 n.12 (11th Cir. 2005) (holding that a sheriff may be held vicariously liable for the negligent actions of his deputies under Florida law); <u>Kaisner v. Kolb</u>, 543 So. 2d 732, 734 (Fla. 1989) (noting courts have "found liability or entertained suits [under a theory of negligence] after law enforcement officers took persons into custody, otherwise detained them, deprived them of liberty or placed them in danger").

In light of the above, Plaintiff has adequately pled ordinary negligence.

ii.    <u>The Actual Treatment of Plaintiff Never Began</u>

In addition to the above, §766.106, Florida Statutes, defines a "claim for medical negligence" as a claim "arising out of the rendering of, or the failure to render, medical care or services."  However, case law has interpreted the "failure to render" medical care or services as actions (or inactions) taken only after the actual medical treatment began.

For example, in <u>Mobley v. Gilbert E. Hirschberg, P.A.</u>, 915 So. 2d 217 (Fla. 4th DCA 2005), a dental patient's simple negligence action stemming from a dental assistant's negligence in dealing with a jammed x-ray positioning arm. <u>Id.</u> at 219.

Mobley was struck in the face by the positioning arm when the dental assistant dislodged it prior to taking the x-ray. Id. The court reversed a summary judgment order, in which the lower court ruled that Mobley failed to comply with the medical malpractice pre-suit requirements. Id. It concluded that "the actual delivery of [medical] treatment had yet to begin." Id. at 219; distinguishing Goldman v. Halifax Medical Center, 662 So.2d 367, 370 (Fla. 5th DCA 1995). "There is a difference between setting up to perform a medical procedure and its actual performance", the Mobley court held. Id.

Likewise, Plaintiff's case also involves Defendant's inactions before the actual delivery of medical treatment began (treatment which never even happened during her incarceration). Although on page 6 of its Motion Defendant attempts to characterize its treatment of Plaintiff as "substandard medical care," providing Plaintiff with over-the-counter Tylenol is not the provision of OBGYN medical services. As per the manufacturer's website,[1] Tylenol's purpose is not meant to treat unpassed fetuses, only to "relieve minor aches and pains" and reduce fevers:

> Acetaminophen is a pain reliever and fever reducer. It is thought to work to relieve minor aches and pains by elevating the body's overall pain threshold so you feel less pain, and lowers your fever by helping your body eliminate excess heat.

---

[1] See https://www.tylenol.com/safety-dosing/usage/what-is-acetaminophen.

The actual treatment of Plaintiff's condition never even began during her incarceration.  See Amended Complaint Paragraphs  20 and 28.

### iii.   Defendants' Caselaw Citations are Inapplicable

Many of the cases cited by Defendant simply regurgitate language from §766.106; specifically, that portion which references the "rendering of, or the failure to render, medical care."  See e.g., Champion v. Cox, 689 So. 2d 365 (Fla. 1st DCA 1997). They are unhelpful to the instant analysis because they add nothing in addition to the statute's language.

One such case Defendant cites is Champion, a defamation case which involved a situation where the actual medical treatment of a plaintiff had yet to begin. It simply concluded that a defamation case is not a medical malpractice case. Id. at 366 (concluding that the "elements of a cause of action for defamation are unrelated to the performance of the health care provider.") By way of contrast, the cases cited by Plaintiff are applicable because they discuss what §766.106 means as interpreted by the courts, not just regurgitating its text. See Morrill v. Holmes Cty., 2017 WL 6330630, at *5 (N.D. Fla. Mar. 23, 2017) (hospital consciously chose not to provide the needed care); Mobley v. Gilbert E. Hirschberg, P.A., 915 So. 2d 217, 219 (Fla. 4th DCA 2005) (actual delivery of medical treatment had yet to begin).

Defendant also cites Tunner v. Foss, 655 So. 2d 1151 (Fla. 5th DCA 1995). However, it is apparent from that decision that the treatment of the plaintiff had

already begun by Dr. Turner. Although not a model of clarity, ¶ 18 of Mr. Foss's complaint indicates the alleged failure of Dr. Turner occurred while treating the plaintiff, it states: ". . . Defendant, Dr. Tunner refused to refer Mr. Foss to a specialist or to hospitalize him for appropriate care consistent with his condition. They were also present when Dr. Tunner discharged Mr. Foss from Lucerne Hospital on May 31, 1991, just a few hours before his Humana Gold coverage expired." Id. at 1152. The court's opinion likewise indicates that treatment has begun, stating that payment was being made by an insurance company to Dr. Tunner for the treatment.[2] In the instant case, the actual treatment of Plaintiff had not begun.

Defendant additionally cites the Middle District case of Christie v. Lee Cnty. Sheriff's Office, No. 2:10–CV–420–FtM–36DNF, 2011 WL 4501953, at *5 (M.D. Fla. 2011). However, that decision was distinguished in Morrill, wherein the Court indicated that the plaintiff's claims in Christie were different because they included the *"failing and/or refusing to timely provide necessary prescription medication."*[3]

---

[2] The court stated on page 1152 the following: "The reason for [Dr. Tunner's] failure to do so was her alleged economic self-interest; *i.e.,* she would suffer economic loss if she referred Foss to a specialist, or admitted him to a hospital."

[3] This Court cited Christie as follows (including the italicized language): "cf. Christie v. Lee Cnty. Sheriff's Office, No. 2:10–CV–420–FtM–36DNF, 2011 WL 4501953, at *5 (M.D. Fla. Sept. 28, 2011 (plaintiff stated a claim for medical negligence by alleging defendants breached their duty of care by failing and/or refusing to provide access to timely adequate medical and mental health assessment, care, and treatment and/or to address his obvious medical and mental health conditions*, and by also failing and/or refusing to timely provide necessary prescription medication*)". By italicizing that language, it is reasonably assumed this

While citing <u>Christie</u> and other cases like it,[4] the Court stated that "[a]lthough Plaintiff's claim here is related to medical care, it has nothing to do with a decision based on professional judgment." <u>Morrill</u>, at *5; <u>also citing Kellar v. Fla. Dep't of Corrections</u>, No. 4:14cv84–RH/GRJ, 2015 WL 1296030, at *5 (N.D. Fla. 2015) (claim that prison's doctor failed to provide the necessary care was grounded in ordinary negligence, not medical negligence).

Finally, Defendant cites the Middle District case of <u>Jones v. Fla.</u>, No. 8:17-CV-2888-T-23AEP, 2020 WL 5628741, at *5 (M.D. Fla. 2020). However, in that case, the plaintiff "received some form of medical care on seven of the sixteen days he was detained, beginning with his receiving medication the day after he reported his prescribed medication and ending with both his receiving an injection for pain and the medical staff's ordering of x-rays the day before his release." He also "had received treatment for his urinary dysfunction on three of the nine days before he complained to the guard." <u>Id.</u> Thus, the facts in <u>Jones</u> are not at all like the facts in the instant case; here, Plaintiff's claims are based the denial of her medical treatment while Mr. Jones obviously had plenty. <u>See e.g.</u>, Amended Complaint, ¶ 15

---

Court was highlighting those facts as a distinguishing factor from the facts in <u>Morrill</u>.

[4] Such as <u>R.W. v. Armor Correctional Health Services, Inc.</u>, 830 F. Supp. 2d 1295 (M.D. Fla. 2011), which this Court in <u>Morrill</u> distinguished by stating: "Here, however, Plaintiff's claim is not that the Hospital made a medical error, but that, for reasons unrelated to medical judgment or performance, the Hospital consciously chose not to provide the needed care."

(Defendant refused to take Plaintiff to see her OBGYN (or any OBGYN)). Therefore, Count I properly states a claim for ordinary negligence.

## II.    Count II Properly States a Section 1983 Claim

A plaintiff attempting to prove municipal or local government liability under §1983 may generally rely on one of four recognized methods for establishing such liability. Although Defendant's Motion discombobulates these methods, Plaintiff's allegations at a minimum are "inferential allegations"[5] respecting at least one or more of these four methods. Therefore, Count II of the Amended Complaint should not be dismissed.  If, however, the Court finds that Plaintiff has insufficiently pled her §1983 claim, she respectfully requests leave to amend to cure any deficiency.

### i.    The Fist Method

The first method available to prove a section 1983 claim is exemplified by Monell v. Dep't of Social Services of the City of New York,[6] where the plaintiffs pointed to an officially adopted, written regulation of the City of New York that required pregnant employees to stop working at a given point in time, even if not medically necessary. Id. at 661. Where, as in Monell, a formal and officially adopted

---

[5] Kindred Hosp. E. LLC v. Blue Cross & Blue Shield of Fla., Inc., 2007 WL 601749, at *4 (M.D. Fla. 2007) (quoting Snow v. DirecTV, Inc., 450 F.3d 1314, 1320 (11th Cir. 2006)).

[6] Monell v. Dep't of Social Services of the City of New York, 436 U.S. 658 (1978).

policy is found to be unconstitutional, a single application of that policy will result in government liability. Id. at 700.

Plaintiff is not attempting to plead a formal and officially adopted policy Defendant. Thus, Defendant's citations to Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown, 520 U.S. 397, 403 (1997) (a plaintiff must "identify a municipal 'policy' or 'custom' that caused the plaintiff's injury") and Grech v. Clayton Cty., 335 F.3d 1326, 1329 (11th Cir. 2003) (failure to identify an official policy or identify an unofficial custom or practice which is established through "the repeated acts of a final policymaker for the county") are inapplicable.

Instead, Plaintiff has pled the lack of a formal and officially adopted policy. As demonstrated by Mack v. Suffolk County, 191 F.RLD. 16 (D. Mass. 2000) (opinion certifying class), sometimes having no policy can be an unconstitutional policy or custom. Mack was a class action lawsuit in Boston brought because there was no place to hold female detainees. As a result, they are taken over to the Suffolk County Jail where they are put in with the general population and automatically strip-searched. Id. at *6-8. Neither the county nor the City of Boston had an official policy requiring individualized suspicion, and a blanket strip-search practice had existed for years. Id. ("There was no requirement that there was individualized suspicion that the women were carrying weapons or contraband.")

Here, Plaintiff pled in Paragraph 57 that Defendant failed to implement

11

adequate hiring, training, staffing, and supervisory procedures, on how to properly classify inmates, initiate and follow medical protocols and/or respond to an inmate's need for medical attention. Not implementing such a policy is unconstitutional; therefore, Plaintiff has properly pled a section 1983 claim under this first method.

        ii.    The Second Method

A second method of establishing local government liability is through the attribution of certain decisions or conduct by final policymakers of the entity. In its Pembaur/Praprotnik/Jett line of cases,[7] the Supreme Court held that a single decision or act by a final policymaker in that area could be attributed to the local government entity for purposes of liability under section 1983.

In the instant case, ¶s 45-49 of the Amended Complaint allege with detail that Defendant's nurse, its lieutenant, and its correctional officers were the delegated final policymakers regarding which inmates received and did not receive medical care. They also made the determination as to when and whether Plaintiff was permitted to have medical care. Id.

---

    [7] Jett v. Dallas Independent School District, 491 U.S. 701 (1989); City of St. Louis v. Praprotnik, 485 U.S. 112 (1988); Pembaur v. City of Cincinnati, 475 U.S. 469 (1986).

a. *The Authority of the Nurse, Lieutenant, and Correctional Officers*

Plaintiff must only allege that Defendant's final policymakers delegated their authority to a subordinate who, in turn, caused a constitutional deprivation. See Gross v. Parker, No. 6:07-cv-1667-Orl-31UAM, 2008 WL 151883, at *2 (M.D. Fla. Jan. 15, 2008) ("[I]n order to establish Armor's liability under § 1983 Gross must allege that … the final policymakers of [Armor] delegated their authority to a subordinate who, in turn, caused a constitutional deprivation …."). Ultimately, whether the individuals in question possess policymaking authority is a matter of state law. Pembaur v. City of Cincinnati, 475 U.S. 469, 483, 106 S. Ct. 1292, 1300, 89 L. Ed. 2d 452 (1986).

In Florida, nurse practitioners can legally possess full practice authority. See §464.0123, Florida Statutes ("Autonomous practice, an advanced practice registered nurse") (providing full practice authority to advanced nurse practitioners). Plaintiff's allegations include the nurse that denied Plaintiff care. See e.g., Amended Complaint, ¶15.  The job titles of Nurse, Lieutenant, and Correctional Officer are more than sufficient to demonstrate each individual's policymaking power.  See e.g., Bennett v. City of Slidell, 728 F.2d 762, 769 (5th Cir. 1984)(delegation of policymaking authority can be made by "policymaking power by an express statement, by a job description or by other formal action.") Similar allegations have

been more than sufficient in other cases, such as <u>Mandel v. Doe</u>, 888 F.2d 783 (11th Cir.1989).

In <u>Mandel</u>, the Eleventh Circuit found that a physician's assistant at a road prison who was solely responsible for medical care at the prison and whose decisions were subject to "no supervision or review" "was the sole and final policymaker with respect to medical affairs at the road prison". <u>Id.</u> at 793-4. The Court held:

> Although it was initially contemplated that the physician's assistant would be supervised by a medical doctor, the evidence revealed that a custom and practice developed so that the policy was that Hatfield [a physician's assistant] <u>was authorized to function without any supervision or review at all</u>. The policy was that <u>Hatfield's medical decisions were subject to no supervision or review, except to the extent that Hatfield himself, in his sole and unsupervised discretion, deemed appropriate</u>.

<u>Id.</u> at 794. The allegations regarding the physician's assistant in <u>Mandel</u> are similar if not identical to the allegations that Plaintiff has made in the instant case as to Defendant's nurse.

> b.   *The Nurse, Lieutenant, And Correctional Officers Need Not be Named at this Stage*

Defendant also appears to fault Plaintiff because she did not identify the policymakers by name. <u>See e.g.</u>, Motion, page 12.[8]  However, "identifying and

---

[8] Stating that "Plaintiff's allegations are truly an attempt to assert vicarious liability onto the County due to the actions of unnamed corrections officers and a nurse for a single incident, which is an improper theory of liability under § 1983."

14

proving that a final policymaker acted on behalf of a municipality is an evidentiary standard, and not a pleading requirement." Hoefling v. City of Miami, 811 F.3d 1271, 1280 (11th Cir. 2016). There, the Eleventh Circuit held that a party need not name the final policy makers in a complaint:

> Although Mr. Hoefling may ultimately have to identify (and provide proof concerning) a single final policymaker in order to survive summary judgment or prevail at trial, see, e.g., Grech v. Clayton County, 335 F.3d 1326, 1329 (11th Cir.2003), we do not think that he had to name that person in his complaint in order to survive a Rule 12(b)(6) motion.

(Emphasis supplied). Thus, pursuant to Hoefling, Plaintiff does not need to name a policymaker in his complaint to avoid dismissal. Furthermore, for security purposes, the full and true names of persons working for Defendant would almost certainly not be something inmates would know.[9]

### c.   *Finding Otherwise Goes Beyond the Four Corners of the Amended Complaint*

Determining whether an employee has final policymaking authority is a question of law for the court to decide. Rosario v. Miami-Dade Cnty., 490 F. Supp. 2d 1213, 1221 (S.D. Fla. 2007). However, the trial judge "must identify those officials or governmental bodies who speak with final policymaking authority for the local government actor concerning the action alleged to have caused the

---

[9] Courts often do not even require parties to be named to state a cause of action. See e.g., Joseph v. Elan Motorsports Techs. Racing, 638 F.3d 555, 560 (7th Cir. 2011) (discussing the permissible practice of naming a defendant as John Doe).

particular constitutional statutory violation at issue." <u>Gomez v. Metro Dade County, Florida</u>, 801 F.Supp. 674, 678 (S.D.Fla.1992) (quoting <u>Jett v. Dallas Indep. Sch. Dist.,</u> 491 U.S. 701, 736, (1989)). In "making this determination, the court should examine not only the relevant positive law, including ordinances, rules and regulations, but also the relevant customs and practices having the force of law." <u>Mandel v. Doe</u>, 888 F.2d 783, 793 (11th Cir.1989) (citations omitted).

Here, Plaintiff has pled that the Nurse, Lieutenant, and Correctional Officers are the final policymakers; Defendant did not need to ratify any subordinate's decision. <u>See</u>  <u>Salvato v. Miley</u>, 790 F.3d 1286, 1296 (11th Cir. 2015) (only when "the authorized policymakers approve a subordinate's decision and the basis for it" have they "ratifi[ed]" that "decision."). Concluding that persons other than the Nurse, Lieutenant and Correctional Officers were the policymakers, as Defendant encourages, would go beyond the four corners of Plaintiff's Amended Complaint. <u>See</u> <u>Wilchombe v. TeeVee Toons, Inc.</u>, 555 F.3d 949, 959 (11th Cir. 2009) (a court considering a Rule 12(b) motion is generally limited to the facts contained in the complaint and attached exhibits, including documents referred to in the complaint that are central to the claim).

### iii. The Third Method

A third method of establishing local government liability is by demonstrating the requisite deliberate indifference on the part of the municipality to recurring

constitutional violations committed by non-policymaking employees or deliberate indifference to a very strong likelihood that constitutional rights will be violated as a result of failing to train, supervise or discipline in certain areas where the need for such training is obvious.[10] Liability in such cases is based on the Supreme Court's decisions in <u>City of Canton v Harris</u>, and <u>Board of County Commissioners of Bryan County v. Brown</u>.[11]

Here, Plaintiff had a serious medical need – a horror story scenario. Specifically, throughout her incarceration, Plaintiff repeatedly requested medical attention as she never passed her fetus and her body was progressively worsening; she almost went septic. <u>See</u> Amended Complaint, ¶s 20, 25 and 41. She was in untreated pain throughout her incarceration, some of which was severe, and was throwing up at least the last several days of her incarceration. <u>Id.</u> at 21. She specifically told the nurse, multiple correctional officers, and at least one lieutenant about her pain, her miscarriage and excessive bleeding, none of whom did anything to get Plaintiff appropriate medical care and attention. <u>Id.</u> at 23 and 24. Even Defendant admits that "this Court would likely conclude that Plaintiff had alleged the minimum amount of facts to set forth a serious medical need at this stage in the

---

[10] <u>See e.g.</u>, <u>Pena v. Leombruni</u>, 200 F.3d 1031, 1033, 1034 (7th Cir. 1999); <u>Allen v. Muskogee</u>, 119 F.3d 837, 843, 844 (10th Cir. 1997).

[11] <u>See City of Canton v. Harris</u>, 489 U.S. 378 (1989); <u>Board of County Commissioners of Bryan County v. Brown</u>, 117 S. Ct. 1382 (1997).

proceedings." <u>See</u> Motion, p.10.

Obviously, Defendant's Nurses, Lieutenants, and Correctional Officers should all be properly trained, supervised, or disciplined when faced with an inmate with a fetus in her body causing her septic conditions. Even someone without any medical training would know to send Plaintiff to an OBGYN under such circumstances. <u>See</u> Amended Complaint, § 33 ("The actions and inactions of the Defendant did not take specialized medical training to know and understand that Plaintiff needed to see a physician in order to determine how to pass the unviable fetus.")

Defendant officially sanctioned these actions and refused to discipline the Nurse, Lieutenant, and Correctional Officers which established a policy that caused the violation of Plaintiff's constitutional rights. <u>Id.</u> at 58. Thus, Defendant was deliberately indifferent to her suffering and situation – exactly what the Constitution prohibits. Accordingly, Plaintiff has also made out a section 1983 case under the third method.

    iv.   <u>The Fourth Method</u>

The fourth method of making out a case against the municipality under section 1983 is the so-called "custom or practice" theory of liability. That is a practice, custom or usage that is so widespread and so persistent that it has the force of law.[12]

---

[12] <u>See Britton v. Maloney</u>, 901 F. Supp. 444 (D. Mass. 1995).

Unlike a policy, which is established by the top-down affirmative decision of a policymaker, a custom develops from the bottom up.[13] It is the subordinate, lower level, non-policymaking employees that engage in a certain practice or custom which becomes "the way things are done."[14] Gary v. Sheehane and Thomas v. District of Columbia[15] both show how a municipality may be liable based on custom or practice, even where the custom or practice is actually contrary to written policy. If it turns out that the municipality had either actual or constructive knowledge of the practice, the municipality will still be "on the hook" under section 1983. See e.g., Vann v. City of New York and Beck v. City of s Pittsburgh, 72 F.3d 1040 (2d Cir. 1995) (deliberate indifference may be inferred if the complaints are followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents).

Here, Plaintiff pled that multiple persons (i.e., a Nurse, Lieutenant, and Correctional Officers) operated under a policy or a custom in failing to take action to obtain emergency medical care for inmates such as Plaintiff and of refusing medical care despite knowledge of their need for treatment. See e.g., Amended Complaint, ¶56.[16] Their collective refusal to act shows an obvious need for better

---

[13] Id. at 450.
[14] Id.
[15] No. 96 C 7294, 1998 WL 6547116 (N.D. III. 1998) and 887 F. Supp. 1 (D.D.C. 1995).
[16] Alleging that "Further, Defendant, through its correctional officers,

supervision and/or discipline. Thus, Plaintiff has also made out a section 1983 case under the fourth method.

## III.   Conclusion

For the foregoing reasons, Defendant's Motion to Dismiss should be denied.

Respectfully submitted,

/s/  Marie A. Mattox
Marie A. Mattox [FBN 07396875]
MARIE A. MATTOX, P.A.
203 North Gadsden Street
Tallahassee, FL 32301
Telephone: (850) 383-4800
ATTORNEY FOR PLAINTIFF

## CERTIFICATE OF FONT/WORD COUNT

I HEREBY CERTIFY that the foregoing contains 4754 words and is typed in Times New Roman font, 14 point.

/s/  Marie A. Mattox
Marie A. Mattox

---

lieutenant and nurse, operated under a policy or a custom in failing to take action to obtain emergency medical care for inmates such as Plaintiff and of refusing medical care despite knowledge of their need for treatment."

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been

furnished to all counsel of record CM/ECF E-Filing this 7th day of September 2022.


/s/  Marie A. Mattox
Marie A. Mattox